All right, we're back. So now, Darren says we can start again. And we will. We're in the first division of the First District of the Illinois Appellate Court on the matter of 1-21-1252. This is a sensitive case, and I would like to make you all aware of an order that was entered late yesterday by this court in this case. During oral arguments, counsel for the party shall only use initials or descriptors when referring to family members of the appellant. That includes naming the appellant by initial or descriptor. For example, the counsel for the party should only refer to the victim as either EM or appellant's daughter. This is because this oral argument concerns a sensitive issue. And because this tape of this oral argument will be available on the internet forever, unless the panel at a later date orders it impounded. We will conduct this oral argument as follows using the initials only of the members of the family and the appellant and using descriptors, i.e., father, mother, child, etc. as needed. As I said, we're in the first division of the First District of the Illinois Appellate Court. On your screens, you see before you my colleagues, Justice Michael Hyman, Justice Mary Ellen Coughlin. We have all read the briefs, read the record, read the cases cited, and we're familiar with that. So I encourage both sides to start with their strongest point and work your way out during the time that you have about 15 minutes. The appellant may wish to reserve some time for rebuttal. That is up to you. And now I will ask you to introduce yourselves to the court. Thank you. Thank you, Your Honor. My name is Daniel Mallon. I'm with the Office of the State Appellate Defender and I represent the petitioner. Thank you. Good afternoon, Your Honors. Assistant State's Attorney Mary Grace Donnelly on behalf of the people of the state of Illinois. Thank you. All right. Mr. Mallon, if you'd like to begin, please. Thank you, Your Honor. Counsel, we are respectfully asking this court to reverse the summary dismissal of my client's pro se post-conviction petition. This is at the first stage of post-conviction proceedings. And my client alleged in his petition that his trial attorneys was ineffective because he became aware that a juror was sleeping during his trial and did not bring this fact to the trial court's attention. Now, this is first stage proceedings. And at this stage, my client's claim only needed to be arguable. And he met the standard. Counsel's failure to alert the court that a juror was sleeping was objectively unreasonable. There was no reasonable basis for his failure to do so. Now, as we cite in our briefs in People v. Jones, this court held that a sleeping juror who misses portions of the evidence at trial violates a defendant's right to a fair and impartial juror. In this case, there's no identification in the petition of the identity, description, anything about this juror, is there? No, Your Honor. But again, this is... I'm sorry. No, go ahead. No. No, Your Honor. I mean, not only that, but when it occurred, was it before? How do we know it wasn't at the time of the first day or the second day before the jurors began hearing evidence? How do we know it didn't occur afterwards, after the evidence was presented? We don't have any idea as to the timing of this at all. That's correct, Your Honor. But again, this is at the first stage of proceedings. It's a pro se petition. It must be taken as true. And he states that a juror was sleeping during witness testimonies. As this court is well aware, it must be liberally construed. And based on his claim, that's why it should go to further proceedings in order to figure out exactly when... Mr. Mellon, you're not suggesting that every single instance of a juror, quote unquote, sleeping rises to a constitutional violation, are you? Because there's a lot of case law out there that would... No, Your Honor. There's case law that's... ...support that point. Correct, Your Honor. No, there's case law that says if they don't miss essential portions of witness testimony, then it won't rise to a constitutional violation. Why then wouldn't your client be required to plead in his post-conviction petition that this juror missed an essential portion of the trial or words to that effect? Because he is a pro se indigent petitioner, and we're only the first stage of proceedings. That's why this should advance to second stage. And that's all we're asking for, is to go to second stage so he can appoint an attorney, and so we can flush out some of these facts in order to make a proper determination of whether or not his constitutional rights were violated. Well, look, let's... He made, I believe, 20 claims in the petition. Is that correct? He made... You're only raising one on appeal, and that's this one, correct? Correct, Your Honor. So let's take one of the other ones that he raised was that the prosecutor used subliminal hypnotic techniques to unduly influence the members of the jury. Well, under your theory here, we'd have to go to second stage on that? No, Your Honor. Let's say... I know you didn't bring it, so it's hypothetical. I'm bringing a hypothetical. But why would that be any different than what you just said with regard to the sleeping jury? Because... Well, obviously, we're not raising that on appeal, because the sleeping... No, I said it's a hypothetical. It's a hypothetical. I know. Correct, Your Honor. Yes. Because this is not based on a fanciful legal theory. How do you know it's not... I mean, how do you... You say it's not fanciful because a hypnotic prosecutor would have a hypnotic effect, and maybe if the prosecutor had a hypnotic effect, maybe that causes sleepiness. Maybe these are related. Perhaps. Maybe that's why he should advance to second stage, and an appointed attorney could help him amend his petition and advance the meritorious claims. I mean, we have a well facts a fundamental right to an impartial panel, and that's... He bases his claim... I think that's a bit of a stretch. I think you're missing a few points in that statement. Well, on People v. Jones, it was on the record... I mean, that was a direct appeal, but it was on the record that the trial court observed... Yeah, that's a big, huge difference. It's not on the record here, and you don't allege any in support of that claim. Well, that's why it's brought on post-conviction. There was nothing on the direct appeal record that would have allowed him to raise his claim. Well, your client was there. I mean, I guess I'm just quite frankly troubled by the blanket assertion with no supporting facts. Well, I believe the law is at the first stage of post-conviction proceedings, his petition must be taken as true unless rebutted by the record, and this claim is not rebutted by the record. Well, apply that argument to Justice Hyman's question. How would this be any different? I think that was much more speculative of a claim that the prosecutor was hypnotizing the jurors. I think this is grounded in well-established... Well, again, we're not raising that claim on appeal. We are just challenging whether or not the court erred in summarily dismissing the sleeping juror claim because this court has held that having a sleeping juror during essential portions of fair and impartial panel, but you presume prejudice. Well, wait a minute. You just said something that's not there. I'm sorry? Substantial portion of the testimony. You used the word substantial. We don't know that. We don't know that was an important part. As I said before, we don't know anything. When it occurred, what witnesses was or witnesses, you know, how long... And it was... Is that correct? Okay. Yes. And it was tried in less than a day. Is that correct? I believe so. All the testimonies on the second day, as I understood, the first day was getting the case ready for the jury. Second day was jury test, testimony before the jury. Third day was closing, and the jury came back after that, right? That's what the record says. Okay. So you agree. So this is not your... This is not a long trial and not a lot of witnesses, and we have... We don't know anything about... You know, what you're saying is at any time in a post-petition, a defendant says, oh yeah, somebody was sleeping. You know, somebody was sleeping. We have to go to the second stage because it's a liberal construction in and of itself. We're just talking right now about the liberal construction, because that's the argument you're raising. Correct. And is that... So is that going to be the rule now in Illinois that anybody could come up and say, yeah, I think so. Yeah. Somebody was sleeping. Yeah. No, not necessarily. I think in this specific case, it was that his attorney was aware that a juror was sleeping. I'm sorry. We don't know from this that his attorney was aware. We know he alleges that the prosecutor was aware, but he doesn't say he told his attorney. One way or the other, I think it's clear from the petition that his attorney... He specifically alleges in his petition that his attorney laughed it off once he became aware that the juror was sleeping. Well, first of all, I mean, laughed it off. It being his saying... His, I don't know, contact with the prosecutor. Is that the it? It's not I believe liberally construed. I think it's pretty clear he's asserting that his attorney became aware that a juror was sleeping and did nothing about it. And maybe he laughed it off because it didn't happen. I mean, yeah, because we have no... Again, there's no... It's a conclusion without any specifics. It's as general as you could come. In fact, doesn't the trial judge, she doesn't even call it a sleeping juror. She writes in the one paragraph about this claim, she uses the word sleepy. Sleepy, correct. In the order dismissing the petition. And I think that was a misconstruction of the claim. It wasn't sleepy. I mean, his claim specifically was listed under ineffective assistance of counsel. Counsel failed to make the court aware of the fact that the members of the jury had been sleeping during witness testimonies and laughed it off when I brought it to the attention of the state's attorney. And he indicates that the state's attorney, his language was whose facial expression of horror showed she was disturbed by that information. So, but to get back to the original question, I think, no, this would not open the floodgates to claims that any time a petitioner can claim that a juror was sleeping, it would advance to second stage. I mean, those sort of claims have been rejected, but this is a specific ineffective assistance of counsel claim where he is alleging that his was deprived of a fair trial because the juror was sleeping. Well, but you just said something with regard to the prosecutor. He thought in his mind that the prosecutor was horrified, right? That's the word that you horrify. Correct. That's from his petition. There's no way that somebody could know whether somebody's horrified or not by an expression because as you know, a prosecutor is not permitted to talk directly with a defendant in trial. I mean, you're not going to be a side conversation without counsel, you know, and how he could get into the mind of the prosecutor, say that the horrified was, wow, you know, I just heard something that's crazy or, I mean, or that has no sense or, wow, he's speaking to me or he's making motions to me. I mean, that could be horrified too. I mean, just because he thinks it's horrified, is that enough to get it to the second stage? I mean, I think the claim again, it's made by a pro se petitioner. Yes, it is enough to get to second stage. He's claiming that he told his attorney that a juror was sleeping and the attorney did nothing. I'm sorry. Well, what I was going to do is go to the next step though. That is with regard to the affidavit. So he needs to bring something forward, affidavits. And in your opening brief, I didn't see anything acknowledging the failure to support his claim with affidavits with regard to Papa, the prosecutor, or explaining why he did not have Papa's affidavit. There was nothing in the opening brief on that, was there? Well, I believe in the opening brief, we noted how he explained that due to the pandemic and due to him being incarcerated, he was unable to obtain any relevant affidavits. And I think it is simply unreasonable to expect my client to be able to obtain an affidavit from a state's attorney. As we know, his own attorney is not going to sign an affidavit attesting to his ineffectiveness. I think it's unrealistic. I agree with it. The law says that. The law says about your own attorney. Yes. But there is no case that has addressed, I'm worried, tell me if I'm wrong, addressed this situation. Obtaining about, no, I haven't found a case of, you know, addressing this situation where a client's defendant's failure to get a affidavit from a state's attorney. I think that's just simply unrealistic. I couldn't, but he has to explain why. And the only explanation that is there in your reply is that he didn't have access to the internet or a computer. On the other hand, we see these pro se petitions on a consistent basis. And most of them are handwritten. And he wouldn't need a computer or the internet because he knows the address of the state's office. So he could have, that is something he would know very well because it's on all the pleadings. So he wouldn't have to go to the internet or a computer in order to get that information. I think he sufficiently explained it, that he was on, I mean, the prisons were on lockdown during COVID. He explained that during COVID he had a hard time obtaining affidavits, but he did have something that shouldn't, I believe this is from the police chief, right? The new police chief, he received something new from the police chief. So he could, and he's not saying I, he just said the only reason given is that he didn't have the internet or the computer. But as I said, tell me why he needed that in order, for what reason? I believe obtaining affidavits from state's attorneys, from prosecutors, from jurors is, it's much easier and much more appropriate to be handled at the second stage of proceedings, where he's appointed an attorney. That's not the law, but the law says that at the first stage, you need more, you need some kind of collaborating evidence, correct? Yes, your honor, but again. So that's what we're talking about. We're talking about collaborating evidence. We understand that he doesn't have to get it, law says, from his counsel in this situation. But there's nothing that says with regard to the least right to leather, asking for an affidavit, then he has an explanation. I wrote, I didn't get a response, whatever. But the response is, I needed a computer and internet, don't know why, but that's what this is. Well, I mean, I think the state points out that my client could have gone on the ARDC website, to which that was my reply. How is he supposed to go to the ARDC website? Right, but that's not, again, the state's attorney is the state's attorney. So you can write to the state's attorney, whether he or she is there, still at that time, it's really irrelevant because you would still communicate with the experience. Again, I think it's unrealistic. I don't believe there's any chance that a state's attorney would have responded and provided my client an affidavit. But that's not the issue. The issue is to explain why you have no collaborating evidence. That's the issue. Well, my client- You could say, like you said, a juror, how far is this going to go? But all you need to do is make the attempt and say, I attempted, received nothing, therefore, I have no collaborating evidence, and you would be in a different situation. Well, Your Honor, respectfully, I think it's just, it would have been a futile attempt. And I believe he sufficiently explained in his petition that due to the COVID pandemic, when he was on lockdown, he was not able to obtain the affidavits that were required. And under the act, if he provides an explanation as to why he did not provide the sufficient corroborating evidence, it should, that meets the act's requirements. So again, we believe under this court's decision in Jones, in cases where a juror is sleeping, prejudice can be presumed. But even if it isn't, the evidence in this case, it boiled down to a credibility contest. There was no physical evidence, there was no propensity evidence entered against him. So even if prejudice is not presumed, we can, this court can find that it's possible, arguable, that because the juror was sleeping, potentially during my client's in his own defense, it's at least arguable that he was prejudiced by his counsel's failure. Any other questions for Mr. Ballin? No? Hearing none, Ms. Donnelly? Good afternoon, Your Honors. ASA Mary Grace Donnelly on behalf of the people. May it please the court, counsel. Your Honors, I would like to focus my time discussing the prejudice argument in our brief. Here, in order for a petitioner to, or excuse me, the trial court's summary dismissal of petitioner's pro se post-conviction petition at the first stage of these post-conviction proceedings was proper because petitioner's ineffective assistance of counsel claim in his post-conviction petition was indisputably meritless because there is no arguable prejudice here. There is no, it is not arguable that had anything been done about this unspecified sleeping juror that was sleeping during unspecified portions of trial that petitioner would have been found not guilty at trial. The reason why there's no arguable prejudice in this case, Your Honors, is because of the clear and consistent testimony of the victim, petitioner's daughter, who testified to five discrete instances of sexual abuse that she suffered by a petitioner. She testified to the first instance of sexual abuse where petitioner asked her to take a nap with her in his bedroom, something that they had done before, except on this one particular occasion when she was about seven or eight years old. Okay, so you're saying, what about counsel's argument was that we are to liberally construe, rather than go back to the fact of the underlying claim, let's look at what's going on here in a first stage. And his argument is we should go to the second stage, we should reverse because of a liberal construction, and that his client could not have possibly gotten an affidavit from the state's attorney's office, so we should just presume that as we do from his own counsel with regard to an effective argument. Yes, Your Honor, so breaking that down, my answer down, so first taking the cooperation requirement issue here, it's our position that petitioner failed to satisfy the Post-Conviction Hearing Act's cooperation requirement by first not only not having an affidavit from ASA Michelle Papa, who he specifically names in his post-conviction petition, but also failing to adequately explain her absence of an affidavit. But then he explained it by he didn't have access to the internet or to a computer. Petitioner does state that in his reply brief, but it's the people's position that petitioner likely had access to mail or some other way of communicating with the court system and the state's attorney's office, given that he had filed his post-conviction petition. Here, petitioner could have sent some sort of letter to the state's attorney's office requesting an affidavit from Michelle Papa and could have explained his steps that he had taken in an attempt to get that specific affidavit from ASA Papa to corroborate his claims in his post-conviction petition. This has been a waste of time. Why shouldn't we find that when it's similar to when you make a claim against one's own attorney, one would not need to have that kind of affidavit from a prosecutor? Your honors, there is no case law directly on point here. However, the rationale and the policy behind not requiring defendants to have affidavits from their own trial attorney client privilege and other sort of communications that ought to be kept between the attorney and counsel. There's no expectation to have counsel come forward and sign an affidavit stating that, yes, I was ineffective at trial. There's no case law on point here in regards to what to do when there's a prosecutor directly named in the post-conviction petition. But here, petitioner did have an affidavit on an unrelated point in his petition from an individual. He had also received communications, I believe, from the police department stating that there would be no affidavits coming in support of his petition. So given that petitioner had been making these attempts to get affidavits from other individuals, he should have gone out and at least attempted to get an affidavit from ASAPAPA or explain in his petition either why he thought it was inappropriate or, I believe... But again, counsel's argument, it's inappropriate on its face because how is a prosecutor going to help the defendant in a case? It's unheard of, I would think. And in this situation, it's unheard of. And that's why it's one of first impression. So what would your response be to that? I mean, again, I'm directing it to his argument. Your Honor, yes. So our response to that would be twofold. First, petitioner still could have tried. He felt comfortable enough, according to his post-conviction petition, liberally construing it and taking it as true to approach ASAPAPA. During the trial, tell her about this unidentified juror that he observed to be sleeping during unspecified portions of trial. Given that he felt comfortable enough to go and approach her and bring her into his concern regarding this unspecified sleeping juror, why shouldn't he be expected to go send her a letter in the mail asking for her for an affidavit? Conversely, petitioner could have in his post-conviction petition stated reasons why he didn't think it'd be reasonable or why maybe he thought it could be futile to request an affidavit from ASAPAPA. It's our position that his general claims about COVID making it difficult for him to get affidavits is insufficient to explain the lack of any sort of affidavit corroborating his claims from ASAPAPA. So, as I understand it, you're saying, one, he knew the name of the state's attorney. And he was not, the lockdown included the library, but it didn't include mail. So he was clearly able to mail things in and get mail back. And those two factors show you that he did not properly explain why he was missing an affidavit from the state's attorney or that he just decided, oh, the state's attorney is never going to bother with me. She's not going to try to help me. So I'm not even going to try it. None of that is in this petition. And that means it's enough for you. That's correct, Your Honors. Given the fact that the petition is silent in regards to why there's no affidavit from ASAPAPA, and the significant part here is the fact that petitioner specifically names the trial ASAPAPA whom he spoke with at that trial, there's either for no affidavit or there's no explanation as to why there is no affidavit, either because petitioners attempts to reach out to ASAPAPA for an affidavit were unsuccessful or because he never reached out because he did not think it would be a fruitful attempt on his part. That should have been included to satisfy the cooperation requirement and that her cooperation or any sort of reason why there is no cooperation from that trial ASAPAPA is no, I'm sorry. If he had written in his petition, you know, I thought about writing the ASA to get an affidavit, but I just thought it would be a futile attempt because why wouldn't ASA help me do anything, ignoring the fact that we all know that the state's attorney is responsible for seeing justice done, not in seeing people convicted. And that I think most of us, we have the opinion that when asked about the truth or falsity of a statement, a state's attorney should certainly, you know, provide the truth. And if the truth was that this petitioner did in fact talk to her at the trial about some juror sleeping, she would be obligated under the attorney's canons of ethics and just a sense of fair play that the state's attorneys are required to follow. She would have to respond in some way. So he, Mr. Mallon is saying, well, he probably thought it was futile to try and do that. We can't really say that he thought that because he doesn't say it in his petition. And we know for a fact that he did not write her a letter and ask for this information from her. So is it fair to say that if she had written the state's attorney for this information and if the state's attorney remembered any of it, the state's attorney would have had an obligation to respond. I believe that's fair to say, your honors. And the fact that there were no steps taken, at least per petitioner's petition, that's noticeably missing. And it shows that his petition is not corroborated per the post-conviction corroboration act. Now, turning to the prejudice argument here, in order for petitioners claim to survive first stage review, his claim cannot be indisputably meritless. And here, because the strengths of the people's case, given the victim's clear consistent testimony regarding five instances of sexual abuse, along with the fact that her guidance counselor also testified at this trial, the guidance counselor's testimony corroborated the victim's testimony, namely being that the guidance counselor testified that in November of 2015, the victim came to her for a meeting. The only thing that's being appealed is the sleeping juror issue. Are you talking about the sleepy juror issue? Yes, your honors. The sleeping juror issue in regards to the ineffective assistance of counsel claim that is on appeal. In order for at least at the first stage post-conviction review, petitioner has to show a justification of ineffective assistance of counsel. It was arguable that counsel's performance was deficient, but he also has to show that it was arguable that he was prejudiced here. And here- You're using the social worker, the counselor rather, to show that there was no prejudice. Correct, your honors. This is different from a single witness case or he said, she said case given here that petitioner also testified in his defense. Here, we have a witness whose testimony corroborated the victim's testimony. Namely that the- You have to show prejudice right now. I mean, my understanding is the liberal construction gets into the second. That's where the parties begin to get into the issues. So we're not- This is as long as a gist of a constitutional claim. It doesn't say and prejudiced. Where's the word and prejudiced? Is that somewhere in the statute? No, your honors. It's within the gist of the constitutional claim. Here the gist, here the constitutional claim that is an issue here in petitioner's post-conviction petition is ineffective assistance of counsel, which as we know, strickland prejudice, there's performance prong and the prejudice prong. However, in order for there to be a gist of an ineffective assistance of counsel claim, part of that gist of the claim has to include an arguable, whether it was arguable that petitioner was prejudiced. Okay, but since we're only talking about the sleepy or sleeping juror claim, wouldn't he then have to allege in his petition that the juror was sleeping during anything that sculpatory or mitigated? And he hasn't done that. So I'm not entirely sure why we're going into the testimony of the counselor. There's no allegation that anybody was asleep or awake during the testimony of the counselor. And there's no allegation that his attorney was ineffective during that testimony of the counselor failed to object when necessary, whatever, there's nothing like that going on. So you're wrapping prejudice up in, in the sleeping or sleepy juror argument, is that correct? Correct, because the sleeping juror argument is in the context of ineffective assistance of counsel. Well, then would it only be that the attorney limited to his attorney didn't object to this sleepy or sleeping juror that the attorney didn't bring it to the attention of court. And we've already discussed that. That's correct, your honors. And we would be saying that like that part of the discussion falls under whether there was an arguable claim that counsel's performance was deficient. But we also in order to determine whether or not that summary dismissal, the first stage of the petition was proper. And assessing whether or not this claim was indisputably meritless, there is a question of whether they're just arguably prejudiced by this unidentified sleeping juror who was sleeping during unspecified portions of trial. And given this without getting in, I guess, to the specifics of who what the testimony was given the strength of the people's hate. We're talking about first stage, we're talking about a pro se self-represented litigant. Now you want them to know all the law with regard to ineffective assistance of counsel. You want them to know about what Strickland stands for. I mean, you're asking quite a bit from somebody who's not an attorney. The idea here is not to have these claims back or forth. The idea here is whether there is any collaboration. I don't think that at the first stage, the prejudice is something that we need to look at right now. We don't know. It may be shown that it did come up during a very important, critical time in the proceedings, and that would be something that would come out in the second stage. So to knock it off in the first stage and prejudice when we don't have the facts, and we have to take everything liberally construed, that doesn't make sense to me. I think you're asking for quite a bit here. Your Honor, I can briefly rephrase and then move on to my next point. We're not asking that petitioner come out of the gate with a full knowledge of Strickland prejudice because this is a first stage pro se post-conviction. That's what you said. They'd have to have that in order to have to show prejudice in every one of these cases. That's not the requirement, and you know that. This case is going to turn on something much different, which is what Jeff Kuczynski is talking about, and what counsel talked about, and you've been talking about. But now you've gone in further to try to make another argument that he has to do something more that just seems to put a tremendous burden on all criminal defendants who want to go to second stage. Perhaps I misspoke, Your Honors. It's the people's position here that the trial court summary dismissal of the petition was proper because petitioner's claim is indisputably meritless because there was no arguable prejudice by this unidentified sleeping juror. But then moving on and addressing counsel's arguments in his opening argument regarding Jones' case that he cites, it's the people's position here that Jones is actually not applicable. This court in Jones stated that this positive fact in that case was that the trial court, without any prompt from either party, the defense, or the state, stated on the record that a juror appeared to the judge themselves to have been half asleep throughout most of trial. But then the judge, after making that observation on the record unprompted, did nothing to address this juror that appeared to be sleeping throughout most of the trial. And this court held that under those circumstances, the trial court on its own motion must make a further inquiry to ensure whether the defendant receives a fair trial. And here in this case, there's nothing. The trial court did not make any observation unprompted on the record regarding this, regarding whether a juror was sleeping or not. And so here, Jones just isn't applicable to this case. And moreover, your honors, turning back to the cooperation requirement, it's our position that whether or not there was an affidavit from ASA Michelle Papa, petitioners should have taken steps in his petition to explain that absence. And the concern here is that if we were to just allow petitioners to sit tight during trial, observe that a juror was sleeping during some portions of the trial, and then take their chances and then get a verdict returned not in their favor, namely being found guilty at trial. But then they would, to then allow them to be able to swear or affirm to something like such as a juror sleeping during parts of their trial, and then find anybody else who would swear or affirm the same, we would be opening the floodgates to align these kinds of claims coming into the court. And here, the issue here though, is that a sleeping juror, the time to address a sleeping juror is during the trial itself, had petitioner or had his attorney brought this issue to the trial court's attention that easily. But that's the claim. That's the exact claim. Yes, right. That's why they're bringing the claim. Because he liberally construed, informed counsel, counsel didn't do anything. Counsel laughed. That's what he did. That's why they should go to the second set. That's his argument. Correct, your honor. And the people would respond to that by saying that petitioner has waived that argument by failing to bring that to the trial court's attention. But that's again, he doesn't have an obligation. He has counsel to do this. That's why it didn't affect the persistence of counsel. I mean, you're trying to get to the claim. This is first stage. So it's a different test. We're looking at it differently. Again, your prior argument also going to the second stage. The first stage is a much lower standard, right? Much more liberally construed, lower standard, just of a constitutional claim. Yes, your honor. And liberally construing the petitioner's post-conviction petition and taking it as true, there wasn't, per his claims, he observed an unidentified juror sleeping during unspecified portions of trial. However, this court in Peoples-Escobedo, in a similarly postured case, affirmed a trial court's first stage dismissal of a pro se post-conviction petition, where the petitioner alleged that he told his attorney that he had observed an identifiable juror sleeping throughout portions of the trial. His attorney did nothing about it. The defendant did nothing about it. And this court in Escobedo held that the petitioner's failure to bring this sort of post-conviction review. And your honors, based on the arguments asserted in our brief and those we stated today, we would respectfully ask this court to affirm the trial court's summary dismissal of the petitioner's post-conviction petition. Thank you, Ms. Downley. Mr. Mellon? Yes, thank you, your honors. I do believe it would be a tremendous burden put on pro se, self-represented petitioners to try to explain the law and to articulate how he was prejudiced as the state suggested in their argument. On the matter of prejudice, it's our reading of Jones that this court will find prejudice assuming a juror is found to be sleeping regardless of the in Jones. And Jones is absolutely applicable here. Jones instructs that having the right to an fair and impartial jury is so fundamental, it was second-pronged plain error. They reversed in that case once it was established a juror was sleeping, regardless of the fact that the evidence was not close. So again, I think it is a tremendous burden on a defendant to expect a petitioner, pro se petitioner, to obtain affidavits from a state's attorney's office. I think it would be an inherent conflict the same way it is an inherent conflict to expect him to get an affidavit from his own attorney explaining his ineffectiveness. My client's claim, a liberally construed, says a juror had been sleeping during witness testimonies. At this we don't know exactly when the juror was sleeping, but that is exactly why we have a three-stage process in post-conviction proceedings where the facts are flushed out and he has the assistance of an attorney to help him amend his petition and clarify exactly what happened here. Okay, but he says more than that. He says the juror was sleeping and I told the state's attorney. He says he brought it to the attention of the state's attorney, Papa. By name? Yes, yes. And he clearly was using mail during this whole time. Correct. But it had nothing to do with the computers in the court in the jail or internet or anything like that. I'm not even sure what state's attorney Papa would have corroborated. But it's not the issue as far as I'm concerned because just the effort to mail her a letter saying, hey, do you remember this happened? Could you please send me an affidavit? Whether she answers it, doesn't answer it, answers it, yes, I remember that, answers it, no, I don't remember it, answers it, no, forget it, whatever. The step of sending her a letter would have satisfied the affidavit part if he mentioned it, but he didn't take that step. And he clearly knew it was important because he took that step for other people. So I'm trying to figure out why that step is missing. And you're telling me he couldn't go to the library, couldn't get on the internet, he couldn't go to the computer. And I'm saying that's irrelevant, doesn't make any difference. He knew her name, he was using the mail. Your Honor, we would submit that that's just too great a burden to put on incarcerated indigent defendants. No, it can't be too great a burden because he did it with someone else. He mailed someone else and said, can you help me out here? And he got an answer. So clearly he knew that that was part of the process at the first stage. He got that. I'm not sure if it maybe he did not know that this was required for this ineffective assistance of counsel claim because it's well established he would not have been able to get an affidavit from his own attorney. We're not talking about his attorney at all. We all agree. But that is the heart of his claim. It's an ineffective assistance of counsel claim. But we all agree he did not have to get anything from his own attorney because what attorney is going to stand up and say to this court, yeah, I screwed up, I didn't represent my client well. Okay, we get that. We're not talking about his attorney, we're talking about the state's attorney. He knew her name, he had access to mail. And to me, that is just a very clear argument because he took advantage of knowing someone's name and using the mail with someone else for this first stage. Correct. But we believe that he explained he was unaware of the addresses due to the COVID pandemic, due to the lockdown. And he, we believe he satisfied, it is our position, he satisfied the corroboration requirement by sufficiently explaining why he was unable to attach. Does his petition specifically say he couldn't, he didn't know her address? He knew her name. He knew she was a state's attorney. Correct. Yes. I don't remember seeing that he said I didn't know her address. I believe he submitted in his affidavit that he was, he did not, could support, you know, generally support all of his claims because he's didn't have access to the internet and the computer. He clearly knew where the criminal court building was. Correct. Yes. He knew that she was a state's attorney. He knew her name. Yes. He had access to mail. Correct. So that to me is a stumbling block here. Well, that's why we would just simply ask, we're simply asking to get the second stage proceedings so we can be appointed an attorney and we can obtain this affidavit. Okay. Any other questions for Mr. Mellon? Mr. Mellon, do you want to wrap up quickly? Very quickly? No, your honors. Again, I think, again, this is, it's a very low standard work, the first stage proceedings, and what we're asking is just to go to second stage. Okay, fine. I'd like to thank you both for your excellent briefs and your very enlightening arguments. This court will take the matter into consideration and issue an opinion forthwith. And with that, this court is adjourned. Thank you.